IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MELISSA JACKSON,

        Plaintiff,

vs.                              Case No. 12-1129-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 10, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 14-24). Plaintiff alleges that she has been disabled since July 2, 2009 (R. at 14). Plaintiff is insured for disability insurance benefits through December

31, 2013 (R. at 16). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: post traumatic stress disorder; bipolar disorder I; personality disorder, NOS; schizophrenia; anxiety disorder; and rule out obsessive-compulsive disorder (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 22). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err at step two by failing to find that plaintiff's borderline intellectual functioning is a severe impairment?**

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v.

5

Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c).

In his report, Dr. Moeller stated that the WAIS-IV (Wechsler Adult Intelligence Scale-IV) test showed that plaintiff was in the borderline range of intelligence (R. at 420, 414). However, Dr. Moeller did not diagnose plaintiff with borderline intellectual functioning, as noted by the ALJ (R. at 421, 20). In addition, Dr. Moeller never indicated that this

impairment would have more than a minimal impact on plaintiff's ability to work.  Furthermore, plaintiff does not cite to any evidence that this impairment would have more than a minimal impact on plaintiff's ability to work.  For these reasons, the court finds that the ALJ did not err by failing to include this limitation as a severe impairment at step two.

Furthermore, once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."  Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008); Dray v. Astrue, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009).

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; the ALJ also stated that he considered the opinion evidence (R. at 19).  Furthermore, the ALJ indicated that in making his RFC findings, he "must consider all of the claimant's impairments, including impairments that are not severe" (R. at 16).  In light of the fact that the ALJ

found other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, and the failure of plaintiff to cite to any medical opinion evidence that plaintiff has limitations from borderline intellectual functioning that were not included in the ALJ's RFC findings, the court finds that the ALJ did not err by failing to include borderline intellectual functioning as a severe impairment at step two.

**IV.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson

8

v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings regarding the plaintiff:

> …claimant has the residual functional
> capacity to perform a full range of work at
> all exertional levels but with the following
> nonexertional limitations: the claimant is
> limited to simple routine repetitive tasks
> not performed in a fast-paced production
> environment involving only simple work
> related decisions and in general relatively
> few work place changes. The claimant is
> limited to occasional interactions with
> coworkers and the general public.

(R. at 19). Plaintiff argues that the ALJ's RFC is not supported by the evidence.

On April 5, 2011, Dr. Moeller prepared a psychological evaluation on the plaintiff (R. at 414-424). Following an interview, an IQ test, and an MMPI test, Dr. Moeller opined that plaintiff had a GAF score of 45 (R. at 421). (Dr. Moeller indicated that plaintiff's GAF score for an extended period of time would be someplace in the 40's (R. at 420). He opined that plaintiff had a moderate limitation in her ability to carry out complex instructions and interact appropriately with the public; he further opined that plaintiff had marked limitations in the following four categories:

> The ability to make judgments on complex
> work-related decisions.
>
> Interact appropriately with supervisors(s).
>
> Interact appropriately with co-workers.
>
> Respond appropriately to usual work
> situations and to changes in a routine work
> setting.

(R. at 422-423).

The ALJ stated that the opinions of Dr. Moeller were:

> …given limited weight to the extent it is consistent with the above residual functional capacity, to the consultative opinion of Dr. T.A. Moeller who reported that he did not believe the claimant was going to make quick improvement over the next year. Dr. Moeller opined that if the claimant's ability to function was viewed across any extended period of time that her GAF scores would be somewhere in the 40's…
>
> The undersigned initially notes that Dr. Moeller's opinion is based upon a onetime examination of the claimant. The undersigned further notes that the result of the claimant's standardized testing resulted in an invalid protocol, making it impossible to provide interpretation…Dr. Moeller's conclusion that the claimant is markedly limited in the ability to get along with supervisors and coworkers appears to be based on the claimant's report of difficulty getting along with people in general and that she did get into an argument with one employer. There is little else to support that portion of Dr. Moeller's opinion. In fact, records from the claimant's group therapy indicate she was outgoing, actively participated, and was a leader of the group (Exhibit 2F, pp. 19-22).
>
> As for Dr. Moeller's conclusion that the claimant's GAF score over an extended period would have been in the 40's, is not only without support, but it is inconsistent with GAF scores from the claimant's treating health provider. The claimant was treated at Comcare from September 2009 through September 2010. Her GAF scores ranged from 55 to 59 over this extended period (Exhibits 2F, 7F & 8F). At no time is there indication that the claimant was functioning significantly below that level.

11

(R. at 20-21).

Plaintiff's treatment records from COMCARE show GAF scores of 55 and 59 (R. at 321, 323, 330, 343, 375, 377, 386, 391).[2] Thus, as indicated by the ALJ, the plaintiff's treatment records clearly show higher GAF scores than that opined by Dr. Moeller. Furthermore, as indicated by the ALJ, plaintiff's treatment notes state that she actively participated in group discussion, showed good insight in sharing with others, challenged other group members appropriately at times or shared possible boundaries to use in situations presented by others and verbalized good knowledge of boundaries, was outgoing and often kept the conversation going, offered encouragement to others, and was a leader of the group (R. at 336-339).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and

---

[2] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)...

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

The ALJ gave greater weight to the treating source opinions regarding plaintiff's GAF and her ability to get along with others.  The ALJ only gave limited weight to the opinions of Dr. Moeller, a one-time consulting psychologist.  The ALJ clearly did not err by giving greater weight to treating source opinions, and by only giving limited weight to the opinions of the consulting psychologist when formulating plaintiff's RFC.  Based on the evidence before the ALJ, the ALJ could reasonably find that plaintiff had some of the limitations set forth in the report of Dr. Moeller, but that those limitations were not as severe as indicated by Dr. Moeller.

As noted by the ALJ, Dr. Moeller stated that the MMPI test resulted in an invalid protocol, making it impossible to provide interpretation (R. at 21, 420).  Plaintiff argues that the ALJ should have recontacted Dr. Moeller for clarification  (Doc. 11 at 10-11).  However, under the regulations, effective March 26, 2012, it states that when the evidence is insufficient or inconsistent, the ALJ may take a number of options, one of which is that the ALJ "may" recontact the treating source.  20 C.F.R.

404.1520b(c); 77 FR 10651.  The court does not find that the report from Dr. Moeller is insufficient or inconsistent regarding the invalidity of the MMPI test.  Therefore, the ALJ did not err by failing to recontact Dr. Moeller.

Plaintiff also argues that the ALJ failed to consider plaintiff's non-severe impairments, including obesity and alcohol dependence when making his RFC findings (Doc. 11 at 8).  However, as noted above, the ALJ indicated that he considered all of plaintiff's impairments, including those that are not severe, and considered all symptoms and evidence when making his RFC findings.  Furthermore, plaintiff failed to cite to any medical evidence that these non-severe impairments resulted in limitations not contained in the ALJ's RFC findings.  The court finds no error by the ALJ in regards to this issue.

**V. Did the ALJ err by failing to provide proper credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence

favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ found plaintiff's testimony was not supported by her treatment records (R. at 21-22). The court will not reweigh the evidence. The court finds that the ALJ's conclusions are reasonable and consistent with the evidence, including plaintiff's treatment records. The court finds no error in the ALJ's credibility analysis.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 15th day of May, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge